UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN F. BROPHY | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-360 (RMC) |
| THE UNITED STATES DEPARTMENT OF DEFENSE, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

John F. Brophy challenges the handling of his request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by the United States Department of Defense ("DOD"). Defendant moves to dismiss or for summary judgment. Finding that DOD's search was adequate and that its declarants are competent, the Court will grant Defendant's motion for summary judgment and will dismiss the complaint.

**I. BACKGROUND**

John F. Brophy, a retired Chief Warrant Officer in the U.S. Army, submitted FOIA requests on January 6, 2004 to the U.S. Army Human Resources Command–Alexandria ("HRC-A") and the U.S. Army Human Resources Command–St. Louis ("HRC-S").[1] These requests sought "a copy of all emails referencing me and generated by personnel attached to or associated with" HRC-A

---

[1] The only disputes between the parties are legal questions concerning the competence of the Defendant's declarants, the adequacy of the searches for responsive documents, and the availability of discovery to Mr. Brophy. Mr. Brophy moved to dismiss a companion claim under the Privacy Act, 5 U.S.C. § 552(a), which the Court hereby grants without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2).

and HRC-S. Defendant's Exhibit ("DEX") 3. The request was limited "to the production of emails . . . generated between 1 December 2002 and 1 December 2003" including, but not limited to, the emails of eleven identified persons. *Id.* It also stated that the emails may have been sent "via the arpstl.usar.army.mil email system, or via the us.army.mil system but your search should not be limited to these two systems." *Id.* p. 2. Mr. Brophy asked for speedy treatment of his request because "this data may permit me to resolve an involuntary retirement action and return to active duty." *Id.*

HRC-A responded by letter dated January 23, 2004, indicating that FOIA requesters must state their willingness to pay reasonable government fees for the processing of their request. Mr. Brophy promptly indicated his assent. By email dated February 20, 2004, Thomas M. Jones, Chief of the FOIA Office at HRC-A, told Mr. Brophy that he could identify four of the eleven service members assigned to HRC-A and would "conduct a reasonable search of any responsive emails maintained by the four HRC individuals." DEX Exh. 2 Doc 5. In fact, one of these four identified individuals was assigned to HRC-S and only three identified by Mr. Brophy were assigned to HRC-A, *i.e.*, Chief Warrant Officer 5 ("CW5") Shuttleworth, CW5 Cox, and CW3 Roberts.

In the parlance of the Army, on February 20, 2004, Mr. Jones "formally tasked" the three Chief Warrant Officers to conduct searches for all emails referencing Mr. Brophy. Declaration of Thomas Jones ("Jones Decl.") ¶ 8. "Searches on HRC-A standard computer email accounts extended to emails on the hoffman.army.mil and us.army.mil domains." *Id.* No responsive emails were located. CW5 Cox had retired but his account was searched by his successor, who found that CW5 Cox had deleted all files from his government computer prior to his retirement. Information technology ("IT") specialists from HRC-A also searched the entire hard drive of CW5 Cox's former

computer but determined that no emails remained. CW5 Shuttleworth found no responsive emails, although he "conducted a search of his outlook express email account for emails referencing plaintiff [which] involved entering 'Brophy' into the search function of his outlook express email software." *Id.* ¶ 10. CW3 Roberts was stationed overseas but IT searched his open email account and his hard drive and found no responsive emails. "The search of his open account was executed by the HRC-A mail exchange network administrator by entering 'Brophy' into a search function for all folders in CW3 Robert's [sic] open account which was accessible via stored server data." *Id.* ¶ 11. IT specialists also searched the hard drive of CW3 Roberts's former computer but determined that none of his emails remained. *Id.* CW3 Roberts was contacted at his deployed overseas location and, in late April 2004, he verified that he had performed a search of his email account using the keyword "Brophy" but found no responsive emails. *Id.*

Mr. Jones sent Mr. Brophy an email on March 10, 2004, notifying him that HRC-A had located no responsive emails and indicating that HRC-S had responsive emails and was processing his request. This was followed on July 29, 2004, by a formal "no record" determination stating that HRC-A had located no responsive emails. Mr. Brophy was told he could appeal the determination if he did so within 60 days of July 29, 2004. HRC-A received an "appeal" on October 13, 2004, from Mr. Brophy's counsel, which HRC-A interpreted as a complaint about the delay in processing Mr. Brophy's request at HRC-S. The letter from counsel was forwarded to HRC-S.

In the meantime, Ms. Wanda Farrow was assigned to handle Mr. Brophy's FOIA request at HRC-S. Ms. Farrow identified eight of the eleven personnel listed by Mr. Brophy as assigned to HRC-S. In mid-February 2004, Ms. Farrow formally tasked each of these eight HRC-S personnel to conduct searches for responsive emails, as she found "no basis to conclude that other

personnel may have emails about plaintiff . . . ." Declaration of Wanda Farrow ("Farrow Decl.") ¶ 5. These searches were conducted by checking the outlook express email software, as at HRC-A. In addition, there was a search conducted of the Soldiers Management System ("SMS"), which is maintained by HRC-S. "SMS is an electronic media system containing data entries used to manage an Army Reserve Soldier's career more effectively and efficiently." *Id.* ¶ 8. A user can attach emails to SMS data entries. *Id.* These search efforts were completed on or about February 23, 2004, and fourteen pages were located, which included ten pages of responsive emails and four pages of memoranda which were email attachments. *Id.* ¶ 10.

Despite this admirably prompt handling, on April 5, 2004, HRC-S sent a response to Mr. Brophy informing him only that his request was being processed and a response would be forthcoming. When nothing was released, Mr. Brophy's attorney sent a June 9, 2004, letter to HRC-S, asking that any responsive emails be sent to him. He attached an authorization form from Mr. Brophy. Ms. Farrow responded on August 24, 2004, to the effect that the authorization form was undated; a dated authorization was submitted by Mr. Brophy on September 3, 2004. Only on November 15, 2004, did HRC-S release the fourteen pages of emails and attachments located in February 2004, along with notice that three of the identified individuals had located no responsive emails. This response was timely appealed by Mr. Brophy.

In December 2004, Mr. Brophy wrote to Ms. Farrow to appeal specifically the "no records" determination. He attached three pages of emails of which he had copies but that had not been located and released by HRC-S. Mr. Brophy argued that additional emails "should have been located." *Id.* ¶ 14. On December 10, 2004, Ms. Farrow tasked the three men who had initially located responsive emails at HRC-S to conduct further searches. She also tasked a fourth person –

identified in the emails submitted by Mr. Brophy-- to search for responsive emails. These searches, including a second manual search of the SMS database, turned up no responsive emails. *Id*. ¶ 15.

However, on or about March 9, 2005, Ms. Farrow discovered an additional 10 pages of responsive emails while reviewing the case file for the forwarding of the administrative appeal. *Id.* ¶ 16. These records had been "inadvertently separated in the case file as non responsive" and were not provided on November 15, 2004. *Id.* They were released to Mr. Brophy on March 31, 2005. *Id.* ¶ 17.

## II. LEGAL STANDARDS

### A. Jurisdiction

Federal district courts have original jurisdiction over civil actions arising under federal statutes. 28 U.S.C. § 1331. Here, Plaintiff brought suit under the Freedom of Information Act, 5 U.S.C. § 552. As this case presents a question of federal law, this Court has original jurisdiction.

### B. Standing

Standing to invoke the jurisdiction of the federal courts under Article III of the Constitution requires a plaintiff to show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). Plaintiff in this case has standing to bring suit. He alleges an injury in fact, that he was injured by Defendant's improper withholding of requested records.

### C. Summary Judgment Standard

Defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. Where matters outside the pleadings are presented in a motion to dismiss, the court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(b)(6). Here, DOD presents declarations and other documents in support of its motion. Thus, the Court treats the motion as a motion for summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### III. ANALYSIS

Mr. Brophy argues that DOD's declarants are not competent to testify about searches that they did not personally conduct. Further, he contends that the searches were not technically reasonable because individual users at DOD might have email software programs in addition to MS Outlook Express and none of these possible software programs was searched. Mr. Brophy also attacks the good faith with which DOD conducted its searches, and he asks for discovery. These points will be addressed in turn.

### A. Competence of DOD Declarants

Mr. Brophy challenges the competency of DOD's two declarants, Mr. Jones and Ms. Farrow, to establish the adequacy of the FOIA searches because neither of them had personal knowledge of the facts as required by Rule 56(e) of the Federal Rules of Civil Procedure. *See* Rule 56(e), Fed. R. Civ. P. ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the

affiant is competent to testify to the matters stated therein.") According to Mr. Brophy, "[w]hile Mr. Jones has personal knowledge of what he asked others to do, he has no personal knowledge of what they in fact did (or did not do) in response to his request. Thus, while Mr. Jones is competent to testify about [HRC-A's] search plan, he is not competent to testify about the reasonableness or adequacy of the search itself." Pl.'s Opp'n at 6-7. In the same vein, Mr. Brophy complains that although Ms. Farrow had personal knowledge of HRC-S's plan for locating records, she had no personal knowledge of the search itself. *Id.* at 7. Given the alleged inadequacy of DOD's evidence, Mr. Brophy asserts that he has no obligation to come forward with facts to show a genuine issue for trial. Therefore, he argues, DOD's motion for summary judgment should be denied as a matter of law.

This argument overlooks the adage that necessity is the mother of invention. The federal FOIA program is a great success for requesters, who submit multitudinous requests to every federal agency every year. Faced with "the most demanding FOIA request ever filed," our circuit court long ago recognized the validity of the affidavit of an individual who supervised a search for records even though the affiant had not conducted the search himself. *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986). This precedent was followed in *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197 (D.C. Cir. 1991). In *SafeCard*, the court noted that the affiant was the most appropriate person to provide a comprehensive affidavit in FOIA litigation, as he was in charge of coordinating the SEC's document search and recovery efforts in response to the plaintiff's FOIA request. *Id*. at 1201. Declarations that contain hearsay in recounting searches for documents are generally acceptable. *Kay v. Federal Communications Commission*, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997), *aff'd,* 172 F.3d 919 (D.C. Cir. 1998) (Table). *See also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d

Cir. 1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search").

Although the government's declarants here did not physically perform the searches for responsive records, they satisfy the requirement of personal knowledge and qualify as competent witnesses concerning the FOIA searches. Each of them has formal responsibility for handling FOIA requests within their respective offices. Mr. Jones is the Chief Freedom of Information and Privacy Act officer for HRC-A. Jones Decl. ¶ 12. Ms. Farrow "serves as command point of contact for general information" within HRC-S for its FOIA program. Farrow Decl. ¶ 1. Mr. Jones identified the HRC-A employees who would be most apt to have responsive documents, and he personally supervised and coordinated the search within HRC-A. He was in direct contact with the employees who performed the actual search. Jones Decl. ¶¶ 6 - 11. Mr. Jones personally communicated with Mr. Brophy. *Id.* ¶¶ 7, 13. In like fashion, Ms. Farrow identified the relevant HRC-5 employees who might have email about Mr. Brophy, delegated the physical search to these persons, supervised and coordinated the search, and corresponded directly with Mr. Brophy. Farrow Decl. ¶¶ 5-6, 9, 12. As the persons in charge of coordinating DOD's search, Mr. Jones and Ms. Farrow were the most appropriate persons to provide comprehensive affidavits. *SafeCard*, 926 F.2d at 1201.

Mr. Brophy's objections to the competency of Mr. Jones and Ms. Farrow to provide declarations in this FOIA case are not well-taken. The Court finds that both declarants were fully competent to provide information concerning the searches.

B. Reasonableness of Search Efforts

The adequacy of a search is measured by a standard of reasonableness and depends

on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive documents may exist, but whether the search itself was adequate. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). Before it can obtain summary judgment in a FOIA case, "an agency must show, viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a search reasonably calculated to uncover all relevant documents." *Id.* There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Blanton v. U.S. Dep't of Justice,* 182 F. Supp. 2d 81, 84 (D.D.C. 2002). Mr. Brophy challenges the adequacy of DOD's search here on two grounds: first, that it was improperly limited to the emails of those eleven persons he identified in his request when it should have included all HRC staffs and offices likely to have had a role in his retirement; and second, that the search was not technically reasonable because it did not include searching email software other than MS Outlook Express.

    1.  <u>Scope of search</u>

An agency is not required to undertake a search that is so broad as to be unduly burdensome. *Nation Magazine v. U.S. Customs Service,* 71 F.3d 885, 890 (D.C. Cir. 2003). "[I]t is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome . . . [because] FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank,* 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (quotation and citation omitted).

    Mr. Brophy complains that DOD limited its search to only those eleven persons named in his FOIA request. In his January 6, 2004, FOIA request, Mr. Brophy asked for "all emails

referencing me and generated by personnel attached to or associated with the U.S. Army and U.S. Army Reserve Human Resource Command (HRC), formerly known as PERSCOM and AR-PERSCOM, St. Louis and/or HRC Alexandria, VA." Def.'s Mem., Ex. 2. The request "specifically include[d], but should not be limited to" emails sent or received by eleven listed individuals. *Id.* Mr. Brophy requested expedition in handling his request "in view of the military personnel exigencies presently confronting our nation, inasmuch as this data may permit me to resolve an involuntary retirement action and return to active duty." *Id.*

Mr. Jones explained how he handled this broad request:

> HRC-A has approximately 2,500 personnel assigned or attached. As there was no basis to conclude responsive emails resided with other HRC-A personnel, the three HRC-A personnel specified by [Mr. Brophy] were identified as those who could reasonably be expected to possess emails responsive to [his] request.

Jones Decl. ¶ 7. Similarly, Ms. Farrow explained:

> HRC-S has approximately 1200 Military and Civilian personnel assigned or attached to the Agency and its tenant activities. With no basis to conclude that other personnel may have generated emails about [Mr. Brophy], the . . . 8 individuals [he mentioned] were identified as those [who] could reasonably be expected to possess emails responsive to [his] request.

Farrow Decl. ¶ 5. Mr. Brophy argues that DOD should have realized that he was seeking retirement-related emails and, accordingly, should have searched all HRC staffs and offices that were reasonably likely to have had a role in his retirement.

In fact, Defendant did not search only the emails of the eleven individuals identified by Mr. Brophy. DOD also searched the SMS database twice. Moreover, any broader search in response to Mr. Brophy's FOIA requests would have been unduly burdensome. Mr. Brophy

submitted an extraordinarily broad request, limited only temporally. With 3700 personnel at HRC-A and HRC-S, it would have been unduly burdensome for DOD to ask them all to look for stray emails relating in any way to Mr. Brophy. In addition, Mr. Brophy's request was too vague and indistinct to impose a burden on DOD to ask a broader spectrum of its personnel in Alexandria or St. Louis to search their emails for responsive documents. The private purpose behind a FOIA request does not govern the requester's rights to receive responsive documents. The actual FOIA request governs the agency's obligations.[2]  "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch,* 108 F. Supp. 2d at 27.

Mr. Brophy also argues that DOD failed to follow up on information it developed during the search for responsive emails as to other locations where responsive documents might exist. *See Campbell v. United States Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir,. 1998) (noting that a "reasonable" search must be enlarged if leads emerge). He relies on an email in which one person commented to another, "Sounds to me like PASD[3] never got the word of [Mr. Brophy's] approval to stay until age 62." Pltf.'s Mem. at 12; Farrow Decl. Att. 9. Mr. Brophy argues that Ms. Farrow should have followed up on this message and inquired at PASD whether anyone there had responsive emails relating to Mr. Brophy.

An agency's search must be evaluated in light of the request made. The agency is "not obligated to look beyond the four corners of the request for leads to the location of responsive

---

[2] Mr. Brophy's hint, at the very end of his letter, that emails relevant to his forced retirement were the real focus of his request would not have allowed DOD to so limit the request itself – "all e-mails referencing me" – to emails relating to Mr. Brophy's retirement.

[3] Mr. Brophy states that this acronym stands for Personnel Actions and Services Directorate. Pl.'s Opp'n. at 12.

documents." *Kowalczyk v. Dep't. of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1996). If the search reveals a lead, the agency must pursue the lead only if the lead is both clear and certain. *Id*.

Mr. Brophy's claim that DOD should have followed up on this "lead" lacks merit. The statement "[s]ounds to me like PASD never got the word of [Mr. Brophy's] approval to stay until age 62" is not a lead and it is not clear or certain. The statement itself indicates that PASD did *not* receive information. There is no indication that anyone contacted or planned to contact PASD to provide it with any information. Thus, Defendant was not required to follow up on this message and inquire at PASD whether anyone there had emails relating to Mr. Brophy. Defendant's search was reasonable.

2. Technical nature of search

There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Blanton,* 182 F. Supp. 2d at 84. While DOD explained that two different HRC offices coordinated a seach that involved three different domains, DEX 1 & 2, it conducted all of its searches for email in MS Outlook Express. Mr. Brophy assails the limits of this search because he infers that other client software is available and in use from the statements that email accounts "are maintained and organized by the individual email users . . . ." Jones Decl. ¶ 12. *See also* Farrow Decl. ¶ 7. Further, he argues that "HRC is likely to have rules and protocols for the management of e-mails, is likely to be able to search e-mail server databases through search functions separate from the search functions available on the hard drives of individual users, and is likely to store e-mail server data." Pltf.'s Mem. at 15.

Mr. Brophy's supposition that government personnel may be allowed to use software

other than MS Outlook and his hypothesis that there may be other technical means available to conduct email searches do not raise a material issue of disputed fact.  These arguments identify only vague possibilities.  "[H]ypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of the agency's search." *Oglesby v. U.S. Department of the Army*, 920 F.2d 57. 67 n.13 (D.C. Cir. 1990).  Unless there is a reason to question the good faith of the agency affidavits, this kind of speculative theorizing has no merit.[4]

### 3. Good Faith

Mr. Brophy also argues that DOD demonstrated a lack of good faith in its unexplained delay of fourteen months before he received DOD's response to his FOIA requests and the delay of ten months before he received any records at all.  Mr. Brophy's FOIA requests were submitted on January 6, 2004.  HRC-A completed most of its search on March 9, 2004, and advised Mr. Brophy informally by email on March 10, 2004, that no responsive emails had been located. HRC-A formally completed its search on April 22, 2004, after CW3 Roberts confirmed that he had searched his personal computer email account from his overseas location and found no responsive emails.  HRC-A sent its formal "no records" response to Mr. Brophy on July 29, 2004, which merely confirmed its informal message of March 10, 2004.  The Court finds no lack of good faith in HRC's handling of Mr. Brophy's request.

HRC-S received Mr. Brophy's FOIA request on February 4, 2004.  It was

---

[4]Further, Mr. Brophy's speculative theories rest on assertions made in the Declaration of Falk Ewers, an incompetent declarant.  Supporting affidavits must be based on personal knowledge.  Fed. R. Civ. P. 56(e); *Judicial Watch v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 264-65 (D.D.C. 2004).  Mr. Ewers, an unpaid intern to Plaintiff's counsel, has no personal knowledge regarding HRC's email systems or search capabilities.  Thus, Mr. Ewers is not competent to provide a declaration regarding HRC's email system or search capabilities.

commendably prompt in its search for responsive documents and by February 23, 2004, had located fourteen responsive documents. For reasons that are unexplained, these documents were not released to Mr. Brophy until November 14, 2004, even though HRC-S wrote to him concerning its "search" in the meantime. While the Court is troubled by the extraordinary lack of follow-through by HRC-S, it cannot find that there was any failure of good faith in its search just because it was deplorably tardy in releasing the documents that were found.[5] For this reason, government delays in responding to a FOIA request are "rarely, if ever, grounds for discrediting later affidavits by the agency." *Duenas Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). None of Mr. Brophy's arguments demonstrates a lack of good faith in the search for documents to respond to his FOIA requests.

Mr. Brophy's argument about the technical scope of the search constitutes mere speculation, and he has not brought forth any evidence of bad faith. In sum, he has not demonstrated a genuine issue of material fact regarding the adequacy of the Defendant's search for records. Therefore, Defendant's motion for summary judgment will be granted. Mr. Brophy's motion to stay the motion for summary judgment and for discovery will be denied.

## IV. CONCLUSION

The Court finds that DOD conducted an adequate search for responsive emails pursuant to Mr. Brophy's FOIA requests. The government's motion for summary judgment will be

---

[5] Ms. Farrow released additional documents from the file when she reviewed it in relation to this litigation and discovered more responsive documents that had erroneously been set aside. Together with the slow release of the initial fourteen documents, the Court finds that this evidences a sloppiness in handling FOIA requests that Ms. Farrow's declaration does not explain. However, such sloppiness demonstrates not a lack of good faith, but merely a lack of energy and dedication.

granted.  Mr. Brophy's motion to stay the motion for summary judgment and for discovery will be denied.  Further, Mr. Brophy's motion to dismiss his claim under the Privacy Act, 5 U.S.C. § 552(a), will be granted without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2).  Accordingly, this case will be dismissed.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: March 8, 2006